STATE of Tennessee, Appellee,

v.

Howard BROWN, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Jan. 24, 2000.

Susan E. Shipley, Knoxville, TN, for Appellant.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Todd R. Kelley, Assistant Attorney General, Nashville, TN, Randall E. Nichols, District Attorney General, Charme P. Johnson Knight, Asst. District Attorney General, Greg Harrison, Asst. District Attorney General, Knoxville, TN, for Appellee.

## OPINION

BIRCH, J.

The issue here presented is whether the trial court correctly applied the rape shield rule[1] in excluding testimony about a rape complainant's prior sexual behavior with a person other than the defendant. The trial court excluded the proffered evidence upon a finding that the defendant did not describe the evidence in detail sufficient to satisfy the requirement of Tenn.R.Evid. 412(d)(1)(iii).[2] In contrast, the Court of Criminal Appeals found no issue in the application of Rule 412(d)(1)(iii); however, it held that the proffered evidence was properly excluded because it constituted inadmissible hearsay.

---

1. Tenn.R.Evid. 412.

2. "The motion shall be accompanied by a written offer of proof, describing the specific evidence [sought to be introduced] and the purpose for introducing it."

We accepted review to address and clarify the overlapping application of the rape shield rule, the rule against hearsay,[3] and the defendant's constitutional right to present a defense.

We conclude that the proffered evidence was proper evidence under the rape shield rule as evidence which tends to "rebut or explain scientific or medical evidence." Tenn.R.Evid. 412(c)(4)(i). Although we agree with the Court of Criminal Appeals that the proffered evidence transgresses the rule against the introduction of hearsay evidence, we conclude that the evidence should have been admitted to satisfy the defendant's constitutional right to present a defense. Accordingly, we reverse the judgment of the Court of Criminal Appeals, vacate the defendant's conviction, and remand this case for a new trial.

## I

In February 1992, Howard Brown, the defendant, was indicted upon four counts of sexual abuse of an eleven-year-old family member. The complainant testified that Brown kept her home from school on several occasions in September and October 1991 under the guise that she was ill. While they were alone, he sexually abused her. She reported this abuse to her maternal aunt on December 9, 1991. The aunt then related the abuse allegations to the complainant's mother, who immediately took her daughter to the University of Tennessee Medical Center.

Robert Kelly Dickson, M.D., examined the complainant in the emergency room at the University of Tennessee Medical Center on December 9, 1991. His examination revealed a large, healed tear of the complainant's hymen. He testified that this tear was consistent with forced vaginal penetration. Dickson opined that the tear must have occurred several weeks prior to

his examination; he found this condition consistent with the medical history related to him by the complainant.

Prior to trial, Brown filed a motion pursuant to Tenn.R.Evid. 412(d)(1) requesting permission to introduce evidence regarding the complainant's prior sexual behavior with another male. As stated, Dickson observed a tear in the complainant's hymen which he attributed to forced penetration. Brown sought to use evidence of prior sexual behavior to provide the jury with an alternative explanation for the complainant's medical condition.[4] This evidence would have tended to rebut the inference that Brown was the perpetrator.

The trial court held a hearing on Brown's Rule 412 motion and determined that the motion failed to specify the proffered evidence in sufficient detail as required by Tenn.R.Evid. 412(d)(1)(iii). Thus, the trial court ruled that the evidence of the complainant's prior sexual behavior was inadmissible.

Based on the evidence presented, the jury convicted Brown of one count of aggravated rape.[5] Brown appealed the conviction. The Court of Criminal Appeals held that the trial court erred in finding the Rule 412 notice insufficient because the State's response to the notice (that both the complainant and her alleged partner denied a sexual relationship in 1991) shows that the State had sufficient notice of the specific evidence sought to be admitted. However, the court affirmed the exclusion of the evidence on the ground that it constituted inadmissible hearsay evidence.

## II

Tennessee's rape shield rule is embodied in Tenn.R.Evid. 412.[6] The law was enact-

---

3. Tenn.R.Evid. 801–804.

4. At trial, Dickson conceded on cross-examination that the hymenal tear could also have been caused by consensual sexual intercourse with an adolescent male.

5. For this conviction, Brown was sentenced to twenty years in prison as a Range I, Standard Offender.

ed to reflect the general view that evidence of prior sexual behavior is irrelevant or, if relevant, has little probative value compared to its prejudicial effect, unless the evidence is within one of the enumerated exceptions. When evidence does fall within one of the enumerated exceptions, it is generally viewed as probative of a material issue without being overly prejudicial. The comment to Rule 412 notes that "... this rule strikes a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy." Tenn.R.Evid. 412 advisory comm'n cmts (1991).

Thus, as we stated in *State v. Sheline*, 955 S.W.2d 42, 44–45 (Tenn.1997), Rule 412 is designed to recognize that intrusions into the irrelevant sexual history of a complaining witness are not only prejudicial and embarrassing but also discourage many complainants from reporting sexual crimes. We also noted in *Sheline* that such evidence can "result in two rape trials at the same time—the trial of the defendant and the trial of the rape victim based on her past sexual conduct." *Id.* at 44.

Rule 412, by its provisions, also "recognizes that[,] despite the embarrassing nature of the proof, sometimes the accused can only have a fair trial if permitted to introduce evidence of the alleged victim's sexual history." Tenn.R.Evid. 412 advisory comm'n cmts (1991). Thus, Rule 412 is a rule of relevance and is written as a rule of exclusion. Its purpose is to exclude all evidence regarding the complainant's prior sexual behavior unless the procedural protocol is followed and the evidence conforms to the specifications of the Rule.

The provisions of Rule 412 applicable to the evidence proffered in this case state in pertinent part:

(c) Evidence of specific instances of a victim's sexual behavior is inadmissible unless ... the evidence is:

(1) Required by the Tennessee or United States Constitution, or

. . .

(4) If the sexual behavior was with persons other than the defendant, [and is offered]

(i) to rebut or explain scientific or medical evidence, or

(ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters....

Tenn.R.Evid. 412(c).

In pertinent part, Brown's Rule 412 motion sought admission of the following evidence:

(1) "[T]he testimony of A.L. and E.G. and others that the complainant had a sexual relationship with a minor named W. S.[7] in 1991 at the time the allegations arose"; and

(2) "[I]mpeachment of the complainant with evidence that she engaged in sexual behavior in South Carolina in 1991."[8]

 It is evident from the above offer of proof, and from our thorough review of the record, that Brown sought only to admit the hearsay statements of A.L. and E.G. regarding the complainant's sexual history. It has long been held that the Confrontation Clause of the Sixth Amendment[9] and art. I, § 9 of the Tennessee

---

**6.** This rule replaced the rape shield statute, Tenn.Code Ann. § 40–17–119 (1991), and now governs the relevance of evidence regarding a rape complainant's sexual history.

**7.** Due to the age of these three witnesses, we identify by initials only.

**8.** In the offer of proof, no testimony whatsoever was adduced from either of the two witnesses in support of the allegation that the complainant "engaged in sexual behavior in South Carolina in 1991."

**9.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

Constitution[10] provide two protections for criminal defendants: the right to physically face witnesses and the right to cross-examine witnesses. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987); *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn.1992). However, Brown never requested that the trial court, by oral or written motion, allow cross-examination of the complainant regarding her alleged prior sexual behavior with W.S. Accordingly, we find that the confrontation clause issues involving cross-examination of the complainant are deemed waived, and they are beyond the reach of this opinion. Tenn.R.App.P. 36(a).

Another right essential to due process is the right "to call witnesses in one's own behalf." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297, 308 (1973); *State v. Sheline*, 955 S.W.2d at 47. Although we find the confrontation clause issue to be waived, Brown has nevertheless properly preserved the issue of whether he was inappropriately denied the right to present the testimony of certain witnesses. This issue addresses the interaction between the rape shield rule, the rule against hearsay, and the constitutional right to present a defense. As previously stated, the only physical evidence indicating that the complaining witness had had intercourse was supplied by Dickson, an expert witness who testified on behalf of the State. He described a large, healed tear of her hymen which without exception was the result of penetrating trauma to the vagina.

■ Brown sought to introduce the testimony of A. L. and E. G. The trial court heard the testimony of both witnesses out of the jury's presence. A. L., age eighteen at trial, testified that she observed W. S., an adolescent male, and the complainant engaging in kissing and fondling. E. G., age fifteen at trial, testified that she also observed W. S. and the complainant kissing and fondling. Additionally, E. G. stated that the complainant had mentioned to her "a couple of times" that she had been having sex with W. S.

Brown, in testimony given later, denied that he had any sexual contact with the complainant; he sought to show through these two witnesses that a person other than he was responsible for the complainant's physical condition. This intended purpose for the admission of the evidence comports precisely with Tenn.R. Evid. 412(c)(4)(i). Its probative value clearly outweighs any unfair prejudice to the complainant. *See* Tenn.R.Evid. 412(d)(4). Therefore, the proffered evidence satisfies the threshold admissibility requirements of Tenn.R.Evid. 412.

■ Evidence which meets the requirements of Rule 412 may yet be inadmissible if it runs afoul of other well-established rules of evidence, the most prominent among these being the rule against hearsay. Generally speaking, the rule against hearsay is considered to be a rule of reliability, while Rule 412 is a rule of relevance. This difference ensures that only evidence deemed most relevant and most reliable is appropriate for consideration by the trier of fact.

■ Although we have deemed the proffered evidence appropriate (at least at the threshold) under Rule 412, the evidence is hearsay because it consists of out-of-court statements offered to prove the truth of the matter asserted. Tenn.R.Evid. 801(c). The evidence does not fall within any of the exceptions to the rule against hearsay, exceptions which are designed to ensure a sufficient indicia of reliability. The evidence is, therefore, inadmissible hearsay under the Tennessee Rules of Evidence. Tenn.R.Evid. 801(c). The defendant contends, however, that exclusion of the prof-

**10.** "That in all criminal prosecutions, the accused hath the right ... to meet the witnesses face to face." Tenn. Const. art. I, § 9.

fered hearsay evidence violated his constitutional right to present a defense.

■ The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment clearly guarantee a criminal defendant the right to present a defense which includes the right to present witnesses favorable to the defense. *Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988); *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1976); *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *Sheline,* 955 S.W.2d at 47. In *Washington v. Texas,* the Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, *he has the right to present his own witnesses to establish a defense.* This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. at 1923 (emphasis added). Similarly, in *Chambers,* the Court stated that "the rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers,* 410 U.S. at 295–96, 93 S.Ct. at 1046. The *Chambers* Court emphasized that the denial or "significant diminution" of these rights "calls into question the ultimate integrity of the fact finding process and requires that the competing interest be closely examined." *Id.; see also Sheline,* 955 S.W.2d at 47.[11]

Although "[t]he right to present witnesses is of critical importance ... it is not absolute. In appropriate cases, the right must yield to other legitimate interests in the criminal trial process." *Chambers,* 410 U.S at 295, 93 S.Ct. at 1046. Specifically, "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 302, 93 S.Ct. at 1049. However, these procedural and evidentiary rules of exclusion "may not be applied mechanistically to defeat the ends of justice." *Id.* "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (quoting

**11.** Part of the flaw in the dissent's analysis of the issue in this case results from the dissent's failure to recognize that a defendant has *both* the right to cross-examine witnesses presented by the State *and* the right to present witnesses in his or her own behalf. While the dissent correctly notes that the defendant in this case waived his right to cross-examine the complainant regarding her alleged prior statement about sexual activity with W. S., the dissent fails to recognize that waiver of the right to cross-examine the complainant does not waive the defendant's separate right to present witnesses in his own behalf. The dissent's analysis is also flawed in that it draws no distinction between impeachment evidence and substantive rebuttal evidence. The two types of proof clearly are not equivalent. A jury considers impeachment proof only when assessing the credibility of witnesses. *See State v. Martin,* 964 S.W.2d 564, 567 (Tenn.1998)(Holder, J.) (citing *State v. Reece,* 637 S.W.2d 858, 861 (Tenn.1982) for the proposition that prior inconsistent statements may be considered only on the issue of credibility and not as substantive evidence). Therefore, even assuming defense counsel had examined the complainant about the alleged prior statement and offered extrinsic evidence of the statement following a denial by the complainant, the jury would have considered the evidence only when assessing the credibility of the complainant. Therefore, unless the dissent is proposing a change in current Tennessee law, simply following Tennessee Rule of Evidence 613 would not have afforded to the defendant his right to offer substantive rebuttal proof which was crucial to explain the State's medical proof and necessary to establish a defense.

*Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)).

The constitutional right to present a defense has been held to "trump" the rule against hearsay in at least two United States Supreme Court decisions. *See Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049. ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."); *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment."); *see also Rock,* 483 U.S. at 44, 107 S.Ct. at 2704 (holding that a defendant's right to present a defense was violated by Arkansas's ban on hypnotically refreshed testimony); *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (holding that the defendant's right to present a defense was denied by the exclusion of evidence); *Washington,* 388 U.S. at 14, 87 S.Ct. at 1920 (holding that the defendant's right to present a defense was violated by a statute which prevented co-defendants from testifying for one another and thus precluded the defendant from introducing his accomplice's testimony that the accomplice had in fact committed the crime). Moreover, the constitutional right to present a defense has been held to "trump" a number of other state and federal rules of procedure and evidence, including rape shield statutes.[12]

The facts of each case must be considered carefully to determine whether the constitutional right to present a defense has been violated by the exclusion of evidence. Generally, the analysis should

12. *See Teemer v. State,* 615 So.2d 234, 236 (Fla.Dist.Ct.App.1993) (holding that the defendant's right to present a defense was violated when the trial court excluded DNA evidence to rebut the state's case and establish the defense of misidentification); *People v. Mason,* 219 Ill.App.3d 76, 161 Ill.Dec. 705, 578 N.E.2d 1351, 1353–54 (1991)(holding that the defendant's due process right to present a defense was violated when he was not allowed to introduce evidence that would have provided another explanation for the injury to the seven-year-old complainant's hymenal ring); *Douglas v. State,* 797 S.W.2d 532, 534 (Mo.Ct.App.1990)(finding constitutional error when the prosecution presented expert medical proof of the complainant's hymenal condition and the trial court precluded the defendant from presenting proof to establish that the complainant had engaged in sexual intercourse with another person before the defendant allegedly assaulted her); *State v. Jalo,* 27 Or.App. 845, 557 P.2d 1359, 1362 (1976) (concluding that the defendant's confrontation rights were violated when the rape shield law prevented him from proving the complainant's motive to lie about her sexual activity with the defendant); *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396, 400 (1985) (holding that the defendant's confrontation rights were violated when he was prevented from showing that the complainant accused him of rape to get out of the house so that she could resume sexual activity with another person); *State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325, 335 (1990)(holding that the defendant's constitutional right to present a defense was violated by the trial court's exclusion of defense evidence that the child complainant's sexual knowledge resulted from a previous sexual assault); *Tague v. Richards,* 3 F.3d 1133, 1139 (7th Cir.1993) (finding constitutional error when the prosecution presented evidence of hymenal injury and the trial court precluded the defendant from showing that the complainant's father had molested her several times prior to the alleged assault involving the defendant); *United States v. Begay,* 937 F.2d 515, 523 (10th Cir.1991) (holding that the defendant's confrontation rights required admission of the complainant's testimony on cross-examination about past sexual activity with a third person and of the physician's testimony about the complainant's condition being consistent with proof that a third person had sexual intercourse with the complainant); *see generally* Annotation, *Constitutionality of "Rape Shield" Statute Restricting Use of Evidence of Victim's Sexual Experiences,* 1 A.L.R.4th 283 (1980 & Supp.1998); Annotation, *Admissibility of Evidence that Juvenile Prosecuting Witness in Sex Offense Case had Prior Sexual Experience for Purposes of Showing Alternative Source of Child's Ability to Describe Sex Acts,* 83 A.L.R.4th 685 (1991 & Supp.1998).

consider whether: (1) the excluded evidence is critical to the defense; (2) the evidence bears sufficient indicia of reliability; and (3) the interest supporting exclusion of the evidence is substantially important. *See Chambers*, 410 U.S. at 298–301, 93 S.Ct. at 1047–49.[13]

■ Applying this test to the facts of this case, we are of the opinion that the hearsay testimony Brown sought to introduce—that the complainant admitted to two friends that she had sexual intercourse with an adolescent male during the same time period the defendant allegedly committed aggravated rape—should have been admitted. As previously stated herein, the testimony Brown sought to introduce was clearly relevant to rebut the State's medical proof of the complainant's physical condition and met the threshold admissibility standard of Tennessee Rule of Evidence 412. Moreover, courts considering similar issues have explained that when proof of hymenal injury is offered in a sexual assault or abuse case involving a child complainant, rebuttal proof of prior sexual experience is particularly critical to the defense since it offers the jury an alternative explanation for the hymenal injury. In the absence of such rebuttal proof, most jurors will presume that the

child is sexually innocent and attribute the hymenal damage to the alleged criminal act. *Tague*, 3 F.3d at 1138; *State v. Reinart*, 440 N.W.2d 503, 505 (N.D.1989); *State v. Howard*, 121 N.H. 53, 426 A.2d 457, 462 (N.H.1981); *People v. Haley*, 153 Mich.App. 400, 395 N.W.2d 60, 62 (1986). Therefore, the proof sought to be introduced in this case was substantially critical to the defense.

Next, though the evidence sought to be introduced is hearsay, it appears to be reliable. Both A.L. and E.G. were friends with the complainant around the time of the alleged incident. Nothing in the record indicates that these witnesses had any animosity toward the complainant or any other motive to fabricate the statement. One of the defense witnesses would have testified that the complainant had twice admitted to her that she [the complainant] had been having sex with an adolescent male. This hearsay proof would have been corroborated by the non-hearsay proof of A.L. and E.G. who were also prepared to testify that they had observed the complainant kissing and fondling the same adolescent male and that they had observed W.S. touching the complainant's breast and buttocks around the time of the alleged criminal incident.[14]

**13.** Relying upon *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the dissent asserts that *Chambers* has been limited to its facts and announced no principle of law that is generally applicable. The dissent apparently fails to recognize that Justice Scalia's opinion in *Egelhoff*, which purported to limit *Chambers*, did not garner a majority and was joined by only three other justices, Chief Justice Rehnquist and Justices Kennedy and Thomas. While Justice Ginsburg filed a separate opinion concurring in the judgment reached by Justice Scalia's plurality, she expressed absolutely no opinion on *Chambers* and its progeny. However, Justice O'Connor filed a dissenting opinion strongly disagreeing with Justice Scalia's characterization of *Chambers*. Justices Stevens, Souter, and Breyer joined Justice O'Connor in dissent. Two years later a clear majority of the Court rejected Justice Scalia's characterization of *Chambers* by recognizing that a defendant has a constitutional right to present a defense and by stating that the right is not

violated so long as evidentiary rules "are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 303, 118 S.Ct. at 1264 (quoting *Rock*, 483 U.S. at 56, 107 S.Ct. at 2711). Accordingly, the dissent's suggestion that the United States Supreme Court has limited *Chambers* to its facts and repudiated its holding that a defendant has a constitutional right to present a defense is wholly without merit. While the rule announced in *Chambers* requires fact-specific, case-by-case application, the general principle remains sound.

**14.** We emphasize that the trial court may consider this evidence of sexual behavior outside the presence of the jury for determining the reliability of the victim's statement that she had engaged in sexual intercourse. The only evidence directly relevant to the rebuttal of the state's evidence of injury to the victim's hymen, however, and therefore admissible under the proper analysis, is the victim's statement regarding sexual intercourse.

The admissibility of the evidence Brown seeks to offer in this case is buttressed by its similarity to evidence that is presently admissible, under Tenn.R.Evid. 803(1.2)(A), as an admission by a party opponent. This rule permits a hearsay declaration which is "the party's own statement in either an individual or a representative capacity" to be entered into evidence. While the State is technically the "party" in a criminal case, the complainant in a criminal case is analogous to a party. Since the hearsay evidence proffered by Brown in this case was the out-of-court statement of the complainant, such testimony is quite similar to hearsay evidence which is currently admissible under Rule 803(1.2)(A). By so stating, we are not suggesting that the proof in this case should have been admitted as an admission by a party opponent, nor are we holding that the complaining witness in a criminal case is a party for purposes of Rule 803(1.2)(A). The similarity of the evidence sought to be introduced by the defendant to evidence currently admissible pursuant to a firmly rooted hearsay exception is significant and mentioned because firmly rooted hearsay exceptions have inherent reliability. Therefore, the reliability of the proffered testimony is evidenced, in part, by its similarity to an existing firmly rooted hearsay exception.[15] Furthermore, the dissent's assertion that the evidence is unreliable because "children and teenagers may be prone to fabricate or exaggerate both the status of their consensual sexual activity and their sexual prowess" is a broad generalization that simply finds no support in the record in this case. Rather than relying upon broad generalizations, we prefer to allow a jury to make credibility determinations.

Because the proffered evidence fits within one of the exceptions to the rape shield rule, the interest supporting exclusion of the evidence is based solely on the hearsay rule.[16] The hearsay rule has "long been recognized and respected by virtually every State" and "is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact." *Chambers*, 410 U.S. at 298, 93 S.Ct. at 1047. However, given the fact that the evidence sought to be admitted in this case has considerable assurances of reliability and is actually very similar to evidence that is permitted as an exception to the hearsay rule, the State's interest in enforcing the hearsay rule to exclude the evidence is substantially less than Brown's compelling interest in presenting the evidence.

Considering the foregoing analysis, we conclude that Brown's constitutional right to present a defense was violated by exclusion of the proffered hearsay evidence. Excluding the proffered evidence essentially deprived Brown of an opportunity to present to the jury critical evidence of an alternative explanation for the complain-

---

**15.** The dissent's suggestion that the excluded evidence more closely resembles a declaration against interest is incorrect. The statement was not at the time of its making, nor is it now, a declaration against the pecuniary, proprietary, or penal interest of the complainant. *See* Tenn.R.Evid. 804(b)(3) ("A statement *which was at the time of its making* so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ....")(emphasis added). Moreover, the dissent's assertion that the evidence was admitted in *Chambers* only because the declarant was unavailable to testify is inaccurate. As in this case, the declarant in *Chambers* was present in the courtroom. *See Chambers,* 410 U.S. at 300–01, 93 S.Ct. at 1048.

**16.** It is interesting that some courts, in cases involving an underage rape complainant, have held that the state has no substantial interest in excluding evidence of prior sexual activity under rape shield laws when such evidence is being offered to prove an alternative source of injury. Rape shield laws were intended to exclude evidence that has little probative value but great capacity to embarrass and distract. In child complainant cases, evidence of prior sexual activity offered to rebut the State's medical proof has great probative value and minimal capacity to embarrass or distract since the inquiry is so limited. *See Tague,* 3 F.3d at 1138–39.

ant's hymenal injury. In the absence of this evidence, the jury no doubt attributed the complainant's physical condition to Brown's alleged criminal conduct. As previously noted, when the prosecution relies upon evidence of a complainant's physical condition in a sexual assault/abuse case involving an underage rape complainant, defense evidence that provides an alternative explanation for the condition is particularly critical. Indeed, the only evidence which made this case more than a pure credibility contest was the State's expert proof of physical injury to the complainant. Significantly, the State's own medical expert conceded on cross-examination that the physical injury he observed was consistent with the complainant engaging in a consensual sexual encounter with an adolescent male. Under such circumstances, depriving the defendant of the right to present critical, reliable hearsay evidence of an alternative explanation for the injury is constitutional error. We are unable to conclude that error was harmless beyond a reasonable doubt in this case. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Howell*, 868 S.W.2d 238 (Tenn.1993).

■■■■ Finally, we reiterate that, contrary to the dissent's exaggerated assertion, our holding does not effectively "abolish our rule against hearsay and potentially abolish other evidentiary rules, such as the rape shield law which as a matter of policy, preclude admissibility of specific and relevant evidence." Our holding is neither novel nor far-reaching. Indeed, Tenn.R.Evid. 412 expressly recognizes that the Constitution may, in certain circumstances, mandate admission of proof that is otherwise inadmissible. We simply apply a long-established rule and hold that when, in a particular case, the rule against hearsay operates to deprive a defendant of his or her right to present relevant and reliable evidence that is critical to establish a defense, the rule against hearsay must yield to the defendant's constitutional right to present a defense.

## III

To summarize, we conclude that Brown waived the right to cross-examine the complainant about her prior sexual behavior; therefore, no right under the confrontation clause is implicated. We conclude, also, that the testimony of the complainant's friends about the complainant's sexual history satisfies the relevancy test of our rape shield rule. Although this testimony violates the rule against hearsay, admission of the proof is nonetheless required to satisfy Brown's constitutional right to present a defense. Accordingly, the judgment of the Court of Criminal Appeals is reversed, Brown's conviction is vacated, and the case is remanded for a new trial. Costs shall be assessed against the State.

ANDERSON, C.J. and DROWOTA, J., concur.

HOLDER and BARKER, JJ., dissent.

HOLDER, Justice, dissenting.

I agree with the majority's conclusion that the rape shield law does not prohibit evidence of the victim's prior consensual sexual activity when the State has introduced evidence of the injury to the victim's hymen. The defendant then could have introduced admissible, competent, and reliable evidence to show prior sexual activity by simply asking the *victim* whether she had prior sexual contact. The defendant's counsel failed to elicit this information from the victim and attempted to "back door" the information via inadmissible hearsay testimony. I depart from the majority's opinion allowing the introduction of the inadmissible hearsay as substantive evidence in lieu of admissible testimony from the declarant who was present at trial to testify.

I disagree with the majority's conclusion that the United States Supreme Court decisions, *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (Rehnquist, J., dissenting), and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35

L.Ed.2d 297 (1973) (Rehnquist, J., dissenting), abrogate a valid and nonarbitrary rule against hearsay evidence and mandate a reversal of this case. The majority's holding potentially abridges other exclusionary rules such as the rape shield rule and places an extremely onerous burden on trial judges.

The majority has misapplied two extremely narrow United States Supreme Court holdings and has created a new constitutional evidentiary principle merely because an attorney failed to follow established evidentiary procedures that were a prerequisite to admission of the desired hearsay testimony. *See Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) ("Relevant evidence may ... be excluded on account of a defendant's failure to comply with procedural requirements."); *see also Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (preclusion of evidence concerning the defendant's past sexual relations with victim was no violation where the defendant failed to comply with procedures). Moreover, the majority applies this new constitutional principle in a manner that relieves criminal defendants from complying with rules of evidence and procedure that are designed to ensure both fairness and admission of reliable evidence in criminal trials.

I would limit the application of both *Green* and *Chambers* to the facts of those cases and would apply their holdings to hearsay issues only when the following factors are present: (1) the statement is a declaration against a penal interest; (2) the declarant is unavailable to testify;[1] (3) the statement is a third-party confession to a crime in which the confession is substantially corroborated by direct evidence; (4) the veracity or reliability of the statement is not questionable; and (5) the defendant otherwise would be absolutely precluded from introducing the evidence.[2] These are the determinative factors in *Chambers* and *Green.* Moreover, this limitation would be consistent with every jurisdiction having assessed the application of *Chambers* and *Green* to hearsay issues; perhaps most importantly the limitation is consistent with *Egelhoff,* 518 U.S. at 42, 116 S.Ct. 2013. The hearsay evidence in the case now before us fails to meet *any* of the above criteria. Accordingly, I would hold that our valid hearsay rule designed to exclude testimony whose trustworthiness is inherently suspect should not be abridged by a due process right to present testimony in this case.

## RIGHT TO PRESENT EVIDENCE

The majority erroneously concludes that "[e]xcluding the proffered evidence essentially deprived Brown of an opportunity to present to the jury an alternative explanation for the complainant's hymenal injury." I disagree. The victim herself was present and available to testify. When the State made an issue of the hymenal tear, the defendant could have simply asked the victim whether she had previously engaged in sexual activity. The failure to pursue this line of questioning is essentially what deprived Brown of an opportunity to present an alternative theory explaining the hymenal tear.

1. In *Chambers,* the trial judge's application of the voucher rule effectively precluded the declarant from testifying that he had previously confessed to the killing for which Chambers was being tried. Accordingly, the declarant in *Chambers* was unavailable as a witness to provide direct evidence of his previous confessions. *See United States v. MacDonald,* 688 F.2d 224, 232 fn. 13 (4th Cir.1982) ("One could argue that *Chambers* applies only where the declarant is available" but unavailable to testify.).

2. The United States Supreme Court placed particular emphasis on the fifth factor, that the defendant was otherwise precluded from introducing the evidence. While the case now before us fails to meet all five elements, it is important to note that our rules of evidence would have allowed the defendant to place this information before a jury had counsel followed proper evidentiary procedure.

In response to counsel's failure, the majority fashions a rule which in effect permits a party who fails to comport with established evidentiary procedures to present inadmissible forms of the desired evidence. Moreover, the majority allows hearsay to be considered as substantive evidence even though the hearsay statement would have been admissible only for impeachment purposes had the defendant complied with the rules of evidence. This elevation of the statement to substantive evidence due merely to a failure to comply with evidentiary procedures is illogical. The troubling aspect of this elevation is that the proffered evidence was subject to multiple layers of reliability and evidentiary problems: (1) the victim may have been lying or boasting when she made the statement to third parties; and (2) it is entirely possible that the victim never made this statement to the third-party witnesses. Accordingly, such evidence should not be admissible as substantive evidence.

The right to present relevant testimony is not without limitation. *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); *Rock v. Arkansas*, 483 U.S. 44, 54, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *see also United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The right to present evidence may in appropriate cases bow to accommodate other legitimate interests in the criminal trial process. *Lucas*, 500 U.S. at 149, 111 S.Ct. 1743. Stated simply, "[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).

States are afforded "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Scheffer*, 523 U.S. at 306, 118 S.Ct. 1261. States shall evaluate whether the interests served by evidentiary rules justify the limitations imposed on the defendant's constitutional right to testify. *Rock*, 483 U.S. at 55, 107 S.Ct. 2704. Rules of exclusion "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." *Scheffer*, 523 U.S. at 306, 118 S.Ct. 1261, *citing Rock*, 483 U.S. at 55, 107 S.Ct. 2704.

The rule against hearsay is predicated on the notion that untrustworthy evidence should not be presented to a trier of fact. *See Egelhoff*, 518 U.S. at 42, 116 S.Ct. 2013 ("Hearsay rules ... prohibit the introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable."). Out-of-court statements are traditionally excluded because those statements "lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." *Chambers*, 410 U.S. at 299, 93 S.Ct. 1038. Accordingly, the Constitution should not be interpreted in a manner that relieves a defendant from compliance with rules of evidence and procedure that are designed to ensure both fairness and reliability. *Id.* at 302, 93 S.Ct. 1038.

### CASES CITED BY MAJORITY

The majority cites the following cases for the proposition that the "constitutional right to present a defense has been held to 'trump' a number of other state and federal rules of procedure and evidence including the prohibition of the state rape shield statutes": *State v. Jalo*, 27 Or.App. 845, 557 P.2d 1359 (1976); *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985); *Tague v. Richards*, 3 F.3d 1133 (7th Cir.1993); *United States v. Begay*, 937 F.2d 515 (10th Cir.1991). These cases are readily distinguishable from the case now before us and did not involve issues concerning hearsay evidence.

The cited cases hold that evidence generally precluded by a rape shield law may

be admissible if the State either opens the door for admission of the evidence or if the evidence is offered for purposes other than to show the victim's moral defect or consent. *See generally Jalo,* 557 P.2d at 1361 (motive); *Black,* 487 A.2d at 400 (bias or motive). The State may open the door for evidence concerning a victim's prior sexual behavior by presenting expert evidence of an injured hymen or other evidence indicating that a victim has been sexually penetrated. *See generally Tague v. Richards,* 3 F.3d 1133 (7th Cir.1993); *United States v. Begay,* 937 F.2d 515 (10th Cir.1991). The key distinction between these holdings and the case now before us is that the proffered evidence of prior sexual contact in the above cases was precluded only by the rape shield laws but was *otherwise admissible* under the general rules of evidence.

The majority's conclusion that the defendant was denied a right to present testimony of an alternative theory explaining the hymenal tear may have been correct pursuant to the above cases if, and only if, the defendant was prohibited, once the condition of the hymen was made an issue, from asking the victim in this case on cross-examination whether she had previously had consensual sexual contact. The mere fact that evidence is not precluded by a rape shield law does not automatically entitle the defendant to present the evidence in a rape trial. The evidence must still otherwise be admissible. Accordingly, the above-cited holdings would not allow admission of inadmissible hearsay and are limited to otherwise *admissible* evidence being admitted under narrow exceptions to the rape shield laws.

## UNITED STATES SUPREME COURT DECISIONS

The majority opinion cites two United States Supreme Court decisions, *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (Rehnquist, J., dissenting), and *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (Rehnquist, J., dissenting), for the proposition that "the constitutional right to present a defense has been held to 'trump' the rule against hearsay." Both *Green* and *Chambers,* however, merely mandated exceptions to Georgia's and Mississippi's rules against hearsay for declarations made against a penal interest. *See Rock v. Arkansas,* 483 U.S. 44, 53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (noting Court in *Chambers* "invalidated State's hearsay rule ...."). Both holdings were narrowly tailored and premised on the "unique" circumstances of each case. *Green,* 442 U.S. at 97, 99 S.Ct. 2150; *Chambers,* 410 U.S. at 299–303, 93 S.Ct. 1038.

The majority cites *Green* for the proposition that "[r]egardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment." *Green,* 442 U.S. at 97, 99 S.Ct. 2150. *Green,* however, is readily distinguishable from the case now before us. In *Green,* the defendant ("Green") and a co-defendant ("Moore") were both indicted for the rape and murder of a victim. Moore was tried separately and sentenced to death. During Moore's trial, the State introduced the testimony of a Thomas Pasby. Pasby testified that Moore had confided to Pasby that Moore had killed the victim. Moore informed Pasby that he shot the victim twice after ordering Green to run an errand.

Green was subsequently convicted by a jury of murder. A second trial was conducted to determine whether Green should be sentenced to death. During the sentencing trial, Green attempted to introduce Pasby's testimony to show that Green was not present when the victim was killed and that Green had not participated in the victim's death. When the case was tried, Georgia recognized an exception to the hearsay rule for declarations against pecuniary interest but not for declarations against penal interest. Accordingly, the trial court held that Pasby's testimony con-

stituted inadmissible hearsay and refused to allow Green to introduce the evidence.

The United States Supreme Court granted certiorari and held that under the facts of *Green* the exclusion of Pasby's testimony constituted a violation of the Due Process Clause of the Fourteenth Amendment. The basis for the Supreme Court's ruling was that the absence of an exception to the hearsay rule for declarations against penal interest precluded Green from proffering relevant evidence even though "substantial reasons existed to assume its reliability." *Id.* at 97, 99 S.Ct. 2150.

In *Green*, the Court was particularly troubled by the "unique circumstances" of *Green*. *Id.* at 97, 99 S.Ct. 2150. Pasby's testimony was admissible in Moore's trial and the State "considered the testimony sufficiently reliable to use it against Moore, and to base [Moore's] sentence of death upon it." *Id.* Moore's statement to Pasby was a spontaneous confession to a close friend. The evidence corroborating the confession was ample. *Id.* The confession was against Moore's interest, and there was no reason to believe that Moore had any ulterior motive in making the confession. Under these unique circumstances, the Court held that "the exclusion of Pasby's testimony denied the Petitioner a fair trial on the issue of punishment." *Id.*

Similar to *Green*, the United States Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), was confronted with a defendant's inability to introduce evidence that a third person had repeatedly confessed orally to committing the murder with which the defendant was charged. When Chambers was tried, the Mississippi Rules of Evidence did not recognize an exception to the hearsay rule for declarations against penal interest and adhered to the common law "voucher rule."[3] The Supreme Court held that the exclusion of the evidence consti-

tuted a violation of the Due Process Clause of the Fourteenth Amendment. As in *Green*, the Court seemed troubled by Mississippi's absence of an exception to the rule against hearsay which would allow introduction of a declaration against penal interest when the declaration was exculpatory and "bore persuasive assurances of trustworthiness." *Id.* at 302, 93 S.Ct. 1038.

In *Chambers*, the Court explicitly noted that the third party's confessions "were originally made and subsequently offered at trial under circumstances that provided considerable assurances of their reliability." *Id.* at 300, 93 S.Ct. 1038. The third party confessed to three different individuals. The confessions were made spontaneously and to close acquaintances shortly after the murder occurred. The confessions were corroborated by substantial independent evidence. The declarant did not stand to benefit from disclosing his role in the murder, and the declarant was present in the courtroom and could have been cross-examined under oath. *Id.* at 300–01, 93 S.Ct. 1038.

The Court briefly noted that a rationale for the rule against hearsay is to exclude untrustworthy testimony. *Id.* at 298, 93 S.Ct. 1038. Where the testimony bears persuasive assurances of trustworthiness and the testimony is exculpatory in nature, the hearsay rule should "not be applied mechanistically to defeat the ends of justice." *Id.* at 302, 93 S.Ct. 1038. Accordingly, *Chambers* effectively held that stringent application of the rule against hearsay may violate fundamental standards of due process when the rule is applied mechanistically and in a manner precluding introduction of statements against penal interest that are both reliable and "directly affecting the ascertainment of guilt." *Id.*

The crux of the *Chambers* and *Green* decisions is that a defendant has a funda-

---

**3.** This rule prevents a party from impeaching its own witness; its corollary is that a party

calling a witness is bound by anything the witness might say.

mental right to present *reliable* evidence of a third party's confession to a crime for which the defendant is being tried. Evidence of a spontaneous confession by a third party that is corroborated by direct evidence satisfies a showing of "particularized guarantees of trustworthiness" and is sufficiently reliable to be admissible as an exception to the rule against hearsay. *State v. Bunyan*, 154 N.J. 261, 712 A.2d 1091, 1094 (1998). A child's off-hand and perhaps boastful remarks, however, to other children concerning the child's sexual prowess lack the particular guarantees of trustworthiness indicative of statements generally admissible under the exceptions to the hearsay rule.

## LIMITATION OF *CHAMBERS* AND *GREEN*

The majority holds that the defendant was denied the opportunity to present a defense pursuant to *Chambers* because hearsay evidence relating to an element of the State's case was excluded. The majority, however, fails to recognize the limited application of *Chambers* articulated in subsequent Supreme Court decisions.

In *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), a plurality of the Court noted the limited application of *Chambers* by stating:

the holding of Chambers-if one can be discerned from such a fact-intensive case-is certainly not that a defendant is denied "a fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to a level of a due process violation.

*Id.* at 53, 116 S.Ct. 2013. The limitation on *Chambers* was subsequently confirmed by an eight-Justice majority, excluding Justice Stevens, in *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). In *Scheffer*, eight Justices agreed that "*Chambers* specifically confined its holding to the 'facts and circumstances' presented in that case."

118 S.Ct. at 1268. Both state and federal courts that have been confronted with *Chambers* have explicitly limited *Chambers* and *Green* to the facts of those cases. *See Welcome v. Vincent*, 549 F.2d 853, 857 (2nd Cir.1977); *Little v. Johnson*, 162 F.3d 855 (5th Cir.1998) ("In *Montana v. Egelhoff*, the Supreme Court explained, '[T]he holding of Chambers-if one can be discerned from such a fact-intensive case ...'"); *Barefoot v. Estelle*, 697 F.2d 593, 597 (5th Cir.1983) ("We think that *Green* is limited to its facts...."); *Maness v. Wainwright*, 512 F.2d 88, 91 (5th Cir.1975) (recognizing factual limits on *Chambers* holding); *McGinnis v. Johnson*, 181 F.3d 686, 693 (5th Cir.1999); *Gacy v. Welborn*, 994 F.2d 305, 316 (7th Cir.1993); *United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir.1994) (noting that *Chambers* was based on addressing antiquated rules of evidence that precluded admission of a third party's confession); *Jones v. State*, 709 So.2d 512, 524 (Fla.1998) (noting that *Chambers* was "limited to its facts due to the peculiarities of Mississippi evidence law which did not recognize a hearsay exception for declarations against penal interest."); *Gudinas v. State*, 693 So.2d 953, 965 (Fla.1997) (limiting *Chambers* to "its facts due to the peculiarities of Mississippi evidence law which did not recognize a hearsay exception for declarations against penal interest."); *State v. Bunyan*, 154 N.J. 261, 712 A.2d 1091, 1095 (1998).

Because it is clear that the application of both *Chambers* and *Green* should be limited to the facts of those cases when applied to issues involving hearsay evidence, this Court should have examined the facts of those cases. Both *Chambers* and *Green* involved: (1) declarations against a penal interest; (2) hearsay statements in which the declarant was unavailable to testify; (3) third-party confessions to a crime that were substantially corroborated with direct evidence; (4) hearsay statements in which the veracity or reliability of the statement was not questionable; and (5) situations in which the defendant would

otherwise absolutely have been precluded from introducing the evidence. I read factor (5) as being the key consideration by the Court in both *Chambers* and *Green*. *See also Gacy v. Welborn*, 994 F.2d 305, 316 (7th Cir.1993) (noting challenge would lie if evidentiary rules were "to blot out a substantial defense" and direct evidence of the defense was unavailable). While both *Chambers* and *Green* are readily distinguishable from the case now before us because direct evidence was available to the defendant to establish the defense, I will also address the applicability of each of the remaining factors.

### Declarations Against Penal Interest

Both *Chambers* and *Green* involved hearsay testimony that should have been admissible as a declaration against the declarant's penal interest. The majority is now applying *Chambers* to a hearsay statement it classifies as a party opponent admission. The majority, however, is unable to cite any authority for applying *Chambers* and *Green* to issues involving hearsay statements other than statements against interest. Courts having previously considered the application of *Chambers* to other classifications of hearsay have not only declined to extend *Chambers* but have also refused to extend *Chambers* to cases involving statements by a party. *See Gacy*, 994 F.2d at 316 (refusing to apply *Chambers* to party admissions).

While the majority's classification of the hearsay statement is beyond the ambit of *Chambers* and *Green*, I believe that the majority erroneously equates the hearsay in this case to a party opponent admission. The majority reaches its conclusion by referring to the victim as a "party." Again, the majority does not cite any law in support of this reasoning. Moreover, the majority's position is inconsistent with both Tennessee law and other jurisdictions that have addressed the issue and held that a victim is not a party to a criminal proceeding. *See City of Chattanooga v. Swift*, 223 Tenn. 46, 442 S.W.2d 257, 258 (1969) (de-

fining the term "party" as meaning "one having a right to control proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from judgment.").

A victim in a sexual assault case is not a party for purposes of a party opponent admission. In *State v. Antillon*, 229 Neb. 348, 426 N.W.2d 533 (1988), the defendant in a child sexual assault case attempted to introduce hearsay statements of the victim. In *Antillon*, the court addressed whether hearsay evidence of a victim's statement was admissible as a statement of a party. The court held that a sexual abuse victim was not party to the criminal proceeding because the victim did not possess the right "to control the proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from the judgment." *Id.* at 538 (citing *City of Chattanooga v. Swift*, 223 Tenn. 46, 442 S.W.2d 257 (1969); *Gibbons v. Belt*, 239 Iowa 961, 33 N.W.2d 374 (1948)). Moreover, the common rationales present for admitting statements of a party are inapplicable to the victim of a crime.

I, therefore, disagree with the majority's assertion that a child victim to a sexual assault crime is or should be treated in the same manner as a party for purposes of a party opponent admission. The victim in this case did not possess the right "to control the proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from the judgment." *See City of Chattanooga*, 442 S.W.2d at 258.

### Declarant Unavailable to Testify

In both *Chambers* and *Green*, the declarants, i.e., the third parties confessing to the crimes for which Green and Chambers were being tried, were unavailable to testify. Had the declarants been available to testify, the hearsay evidence would likely have been properly excluded. *See Gacy*, 994 F.2d at 316 (holding when direct evidence is available the constitution does not provide "an accused the privilege of

proffering, through hearsay, his self-serving statements...."). A declarant must be unavailable to testify for the declaration against penal interest exception to be applicable.

As noted in the previous section, the victim in this case was a non-party. The declarations against interest exception applies to non-parties. Accordingly, the majority should have analyzed this issue under the exception for declarations against interest. While such an analysis would have met one of the factors of *Chambers* and *Green*, the hearsay exception would not apply as the declarant *was* available to testify. *State v. Dicks*, 615 S.W.2d 126, 129 (Tenn.1981); *Smith v. State*, 587 S.W.2d 659, 661 (1978).

### Corroboration or Reliability

The majority also concludes that because the victim was "analogous to a party" the victim's out-of-court statement was reliable because "such testimony is quite similar to hearsay evidence which is currently admissible under Rule 803(1.2)(A)." This logic is circular and assumes reliability without examining the content of the statement.

The defendant attempted to proffer hearsay evidence that the eleven-year-old victim had stated that she had previously engaged in sexual intercourse with an adolescent male. In examining the potential veracity or reliability of this statement, one must examine both the content of the statement and the context in which the statement was made. Moreover, one must also consider the age of the declarant in this case.

Children and teenagers may be prone to fabricate or exaggerate both the status of their consensual sexual activity and their sexual prowess. Children may succumb to peer pressure or fabricate stories of sexual promiscuity to be viewed as "cool" or "mature." The mere fact that the victim was a rape victim does not automatically render the victim's hearsay allegations of sexual promiscuity with an adolescent male reliable. The victim simply may have been attempting to impress a friend.

The majority further asserts the hearsay statement was "corroborated by the non-hearsay proof" that a defense witness observed the victim kissing and fondling the adolescent male. This evidence is analogous to evidence that the rape shield rule was designed to prohibit. That the victim consented to "kissing and fondling," if true, would not indicate that the victim consented to or did have sexual intercourse with either the adolescent male or the defendant. This evidence corroborates nothing except the fact that the victim had an adolescent boyfriend.

In both *Chambers* and *Green*, the Court went through numerous factors that supported persuasive assurance of trustworthiness concerning the hearsay statements. In both cases the declarants had confessed to committing the criminal acts for which the defendants were being tried. The declarant's statements were admissible against the declarants. In *Green*, the declarant's statement was sufficiently reliable to use against the declarant and to impose a sentence of death. Moreover, considerable direct evidence corroborated the declarants' confessions in *Chambers* and *Green* whereas the corroborating evidence in the case now before us is *at best* circumstantial in nature and is irrelevant to the crime charged.[4]

### Preclusion from Presenting Exculpatory Evidence

Of primary concern to the Court in both *Chambers* in *Green* was that the absence of a hearsay exception for declarations against a penal interest precluded the defendants from introducing reliable evidence that others had confessed to

---

4. Proper "corroborating evidence" in the case now before us would have been evidence that the witness actually viewed the victim having intercourse with the adolescent male, thereby directly corroborating the veracity of the hearsay statement.

committing the crimes for which the defendants were being tried. Such evidence, if believed by a jury, could have the effect of exonerating a defendant in a criminal proceeding. Accordingly, the Court in both *Chambers* and *Green* effectively created exceptions to Georgia's and Mississippi's rules against hearsay for declarations against penal interest due to: (1) the exculpatory nature of the third parties' confessions; (2) the confessions' persuasive assurances of trustworthiness; and (3) the lack of an evidentiary rule allowing a defendant to introduce evidence of a party's confession to the crime charged.

Unlike the defendants in either *Chambers* or *Green*, the defendant in the case now before us was not precluded by the Tennessee Rules of Evidence from introducing evidence of the victim's statement. Pursuant to Tennessee Rule of Evidence 613 the defendant's counsel could have simply elicited from the victim whether she had ever told anyone that she had previously had sexual contact with an adolescent male. The victim could have then either admitted making the statement and explained the content or the circumstances surrounding the statement or the victim could have denied making the statement. If the victim denied making the statement, the defendant could have then introduced the hearsay evidence for impeachment purposes pursuant to Tennessee Rule of Evidence 613. *See State v. Martin,* 964 S.W.2d 564 (Tenn.1998). The defendant, however, did not follow the established procedure in Tennessee for introducing this type of evidence. Moreover, the statement was not truly exculpatory in the sense that even if the victim had engaged in prior sexual activity with an adolescent male she still could have been a victim of rape at the hands of the defendant.

## BURDEN ON TRIAL COURTS

While the majority has not clearly articulated the precise new hearsay exception created by this case, the exception would appear to be as follows:

> The rule against hearsay may be abridged whenever the rule against hearsay excludes evidence that may negate an essential element of the State's case thereby impeding a defendant's ability to present a complete defense.

Such a broad holding is dangerous precedent and places trial judges in a "Catch-22" situation. Hearsay evidence is generally relevant evidence proffered to negate an element of the State's case. The preclusion of *any* evidence that tends to negate an element of the State's case impedes a defendant's ability to present a defense. Accordingly, the majority's analysis and its failure to articulate a precise and narrow exception to be applied in similar cases effectively abolish our rule against hearsay and potentially abolish other evidentiary rules such as the rape shield law which, as a matter of policy, preclude admissibility of specific and relevant evidence.

Trial judges may now face a difficult task in deciding the admissibility of generally inadmissible evidence. Trial judges in a criminal proceeding when faced with proffered hearsay evidence must: (1) decide whether the evidence is hearsay; (2) decide whether the evidence is admissible as an exception to the rule against hearsay; and (3) determine whether the hearsay evidence negates an element of the State's case. If the trial judge admits the hearsay, the trial judge may have committed error by allowing introduction of inadmissible evidence. If the trial judge precludes the hearsay, the trial judge, according to the majority, may have committed reversible error by impeding the defendant's right to present a case. Accordingly, the trial judge faces potential error regardless of the evidentiary ruling. Furthermore, the trial court has neither the appellate court's benefit of hindsight nor a complete trial record with which to determine whether the er-

ror of admitting or the error of excluding is egregious error or harmless error.

## CONCLUSION

*Chambers* and *Green* did not technically "trump" a valid rule against hearsay evidence. Both cases operated to create a clearly enunciated and recognized exception to the hearsay rule for declarations against a penal interest. The majority in the case now before us does not create a narrow and *recognized* exception to the rule against hearsay for a specific type of testimony or evidence. Absent an articulation of a new exception to the rule against hearsay, the majority has strayed from the analysis in *Chambers* and *Green.* Moreover, absent a recognized and articulated exception, the majority is creating an amorphous rule that will abridge an established hearsay rule precluding admission of unreliable and untrustworthy evidence.

The proper procedure in the case now before us would have been for trial counsel to ask the victim whether she had ever told anyone that she had previously engaged in consensual sexual activity. Counsel did not do so. Trial counsel, not the trial court, essentially deprived Brown of the opportunity to present an alternative explanation to the jury.

The rule this Court fashions today allows an inadmissible hearsay remark to be introduced and treated as substantive evidence regardless of the veracity of the remark. The testimony in question would not have risen to the level of substantive evidence had defense counsel followed evidentiary procedures. This inconsistency is precisely why Tennessee Rule of Evidence 613 exists and why such evidence should be subject to our established procedure. I, therefore, believe that this Court need not invoke the narrow due process right to present third-party confessions articulated in *Chambers* and *Green* merely because trial counsel in the case now before us failed to follow established procedure. *See Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (stating relevant evidence may be excluded "on account of a defendant's failure to comply with procedural requirements"). While the majority's result in this case may be desirable, the means to accomplish this desired result at this stage of the proceedings defies precedent and undermines our evidentiary policies of assuring reliable and trustworthy evidence.

For the foregoing reasons, I respectfully dissent.

I am authorized to state that Justice BARKER joins in this dissenting opinion.